**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

J & J SPORTS PRODUCTIONS, INC.,

                      Plaintiff,           **REPORT AND RECOMMENDATION**

    v.                                     19-cv-06124 (RPK) (ST)

JEAN R. JOSEPH, and
CANCUN CAFE OF S.I. II, LTD.

                      Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

       On October 23, 2019, Plaintiff J&J Sports Productions Inc. ("Plaintiff") commenced this action against Defendants Jean R. Joseph ("Joseph") and Cancun Cafe of S.I.II, Ltd. ("Cancun Cafe") (collectively, "Defendants") for unlawful interception, divulgence, publication, and exhibition of Plaintiff's communication in violation of the Federal Communications Act ("FCA"). Defendants have failed to answer the Complaint or otherwise appear in this action. Plaintiff filed the instant Motion for Default Judgment against Defendants to recover damages for Defendants' violation of Section 605 of the FCA. The Honorable Rachel P. Kovner referred Plaintiff's Motion to the undersigned to issue a Report and Recommendation.

       For the reasons discussed below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part as to Defendant Cancun Cafe and denied as to Defendant Joseph. This Court further recommends that Plaintiff be awarded statutory damages in the amount of $1,400.00 and enhanced damages in the amount of $1,400.00, for the total amount of $2,800.00 with post-judgment interest. With respect to costs and attorney's fees, it is recommended that Plaintiff be granted leave to make a supplemental motion for costs and fees no later than thirty (30) days after the judgment becomes final.

1

## I. BACKGROUND

### A. Factual Background

The Complaint in this action sets forth the following allegations: Plaintiff is a corporation with its principal place of business located in 950 South Bascom Avenue, Suite 3010, San Jose, California 95128. Compl. ¶ 6. Plaintiff alleges that Cancun Cafe is a New York based establishment operating at 19 Broad Street, Staten Island NY 10304 and "is specifically identified on the New York State Liquor Authority License (License Serial No. 122693)." Compl. ¶¶ 9-10. Joseph is the alleged owner, operator, manager, and principal of Cancun Cafe. Compl. ¶¶ 11-12.

In September 2016, Plaintiff entered into an agreement with non-party Top Bank Inc. ("License Agreement"). Compl. ¶ 19. Plaintiff alleges that under the License Agreement, it was given the exclusive nationwide commercial distribution rights to telecast "Manny Pacquiao v Jessie Vargas, WBO World Welterweight Championship Fight Program" ("Program"). *Id*. The telecast was scheduled to take place on November 5, 2016, at commercial establishments such as theaters, arenas, bars, clubs, lounges, and restaurants. *Id*. Plaintiff allegedly paid substantial fees for its exclusive rights to exhibit the Program under the License Agreement. *Id*. Pursuant to the terms of the License Agreement, Plaintiff entered into subsequent sublicensing agreements with various commercial entities, by which it granted these entities the rights to publicly exhibit the Program within their respective commercial establishment ("Sublicense Agreement"). Compl. ¶ 20. Plaintiff alleges that the Program could only be exhibited in a commercial establishment in New York if said establishment was contractually authorized to do so by Plaintiff for a commercial fee. Compl. ¶ 22.

The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Compl. ¶ 25. The transmission of the Program was electronically coded or "scrambled". Compl. ¶ 24. In order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment. *Id*.

On November 5, 2016, the night when the Program was scheduled to telecast, Plaintiff alleges that Cancun Cafe unlawfully broadcast the Program on one of its television screens. Compl. ¶ 26. Plaintiff alleges that Joseph had the right, ability, obligation to supervise the activities of Cancun Cafe, which included the unlawful interception, receipt and publication of Plaintiff's Program. Compl. ¶ 13. Plaintiff further alleges that Joseph specifically directed Cancun Cafe's employees to unlawfully broadcast the Program, especially since Jospeh had an "obvious and direct financial interest" in Cancun Cafe's operations. Compl. ¶¶ 14-15.

### B. Procedural History

On October 23, 2019, Plaintiff commenced this action against Defendants. Compl., Dkt. No. 1. In the Complaint, Plaintiff alleges that Defendants violated 47 U.S.C. § 605 and 47 U.S.C. § 553. Compl. at 7-10. Plaintiff filed an Affidavit of Service indicating that on November 12, 2019, Defendant Cancun Cafe was served with the Summons and Complaint by service upon the Secretary of State of the New York State Department of State, and Defendant Joseph was personally served at his place of residence. Aff. of Service, Dkt. No. 6-7; Pl.'s Decl. ¶ 15, Dkt. No. 15, Attach. No. 3.

#### 1. Plaintiff's First Motion for Default Judgment

On January 15, 2020, Plaintiff filed its first Request for Default. Dkt. No. 8. On January 21, 2020, the Clerk of the Court issued a Certificate of Default. Dkt. No. 10. Plaintiff filed its first Motion for Default Judgment, and on March 26, 2021, it was denied by Judge Gary Brown.

3

*See* Dkt. Entry dated 3/26/2021. Judge Brown noted that Plaintiff's motion was another "slapdash filing by plaintiff J&J Sports Productions, Inc., continuing its "frequent disregard of law, procedure and rules" in an attempt to vindicate its purported intellectual property rights through a default judgment." *Id*. Judge Brown's denial was based on the fact that Plaintiff's counsel's sworn declarations bore no resemblance to the sworn certificates of service. *Id*. More specifically, Judge Brown held that "[f]irst, counsel avers (at paragraph 15) that "[s]ervice was made respectively at Defendant's actual place of business on a person of suitable age and discretion, and was subsequently mailed to Defendant(s) as required by CPLR 308(2)...". *Id.* However, the certificates of service indicate that the Defendant Joseph was not served at a business address but rather at his apartment. *Id*. Furthermore, the certificates of service did not indicate any mailing to either Defendant. Thus, with service concerns underlying Plaintiff's motion, Judge Brown vacated the entries of default against Defendants. *Id*.

### 2. Plaintiff's Second/Instant Motion of Default Judgment

Subsequently, on April 7, 2021, Plaintiff filed its second Request for Default, following which the Clerk of the Court issued a Certificate of Default on July 14, 2021. Dkt. Nos. 13-14. On July 27, 2021, Plaintiff filed its instant Motion for Default Judgment. Dkt. No. 15. Plaintiff filed a certificate of service indicating that on November 12, 2019, Cancun Cafe was served via the Secretary of State and Joseph was served personally at his place of residence. Aff. of Service, Dkt. Nos. 6-7; Pl.'s Decl. ¶ 15, Dkt. No. 15, Attach. No. 3. Plaintiff also filed a Certificate of Service indicating that Defendants were mailed with a copy of Plaintiff's Application for Default. Pl.'s Mot. at 4.

4

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure establish the procedure by which a default judgment may be obtained. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (explaining the process for entry of default and entry of default judgment prescribed by Fed. R. Civ. P. 55). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against the defendant, and the defendant fails to appear to move or set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

A party in default is deemed to concede all well-pleaded factual allegations in the complaint pertaining to liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989); *see also Rolls-Royce PLC v. Rolls-Royce USA*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) ("[I]t remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."). A court considering a motion for default judgment thus retains the discretion to determine whether the entry of default judgment is appropriate in the given case. *Enron*, 10 F.3d at 95*; see also Taylor v. 312 Grand St. LLC*, 15 Civ. 5410 (BMC), 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." (citations omitted)). A plaintiff moving for default judgment against a defendant in default thus

5

retains the burden to establish the defendant's liability on any asserted cause of action on the basis of the unchallenged factual allegations and reasonable inferences drawn from the evidence in that case. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . .").

Rule 4(e) governs the procedural requirements for the service of individuals. Fed. R. Civ. P. 4(e). It provides that an individual may be served by delivering a copy of the summons and the complaint to that individual personally. Fed. R. Civ. P. 4(e). *Westchase Residential Assets II, LLC v. Gupta*, 14-cv-1435 (ADS)(GRB), 2016 WL 3688437 (E.D.N.Y. 2017). A plaintiff may also serve a corporation "in the manner prescribed by Rule 4(e)(1) for serving an individual, which allows for service according to state law in which the federal district court is located or where service is made. Fed. R. Civ. P. 4(h)(1)(A); 4(e)(1). Under New York law, a corporation can be served through "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1). Moreover, CPLR § 311(a)(1) recognizes that an agent for service on a corporation includes the Secretary of State of New York under N.Y. Bus. Corp. Law §§ 306 and 307. *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995) ("New York designates the Secretary of State as agent for service of process for all corporations").

6

### III. DISCUSSION

#### A. This Court has Jurisdiction

Per 28 U.S.C. § 1331, this Court has federal subject matter jurisdiction over the present matter. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of New York. 28 U.S.C. § 1391(b)(2).

#### B. Defendants have not appeared or otherwise responded

Despite being properly served with Summons and Complaint on November 12, 2019 and with Application for Default on July 27, 2021, Defendants failed to answer or otherwise respond to Plaintiff's Complaint. Aff. of Service, Dkt. Nos. 6-7.

#### C. Defendant Cancun Cafe is liable under 47 U.SC. § 605

In the Complaint, Plaintiff alleges that Defendant violated 47 U.S.C. §§ 553 and 605, and seeks damages under both statutes. Although Plaintiff asserts claims under two statutes, Plaintiff is required to elect between the two statues with respect to the damages it seeks. *J & J Sports Production, Inc. v. Jusna Inc.*, 553 F. Supp. 2d 226 (E.D.N.Y. 2008). This is because an aggrieved party is entitled to only one, non-duplicative recovery. *J & J Sports Productions, Inc. v. His & Hers Bar & Lounge Inc.*, CV 17-4181 (ADS) (GRB), 2018 WL 4925706, at 3 (E.D.N.Y. Aug. 31, 2018). Moreover, where a defendant's liability can be established under both sections, the Second Circuit has made clear that the court should award damages pursuant to Section 605. *See, Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008-09 (2d Cir. 1993).

Here, since Plaintiff has elected to recover under 47 U.S.C. § 605 in its Motion for Default Judgment, this court will assess liability under that statute only. *Id*.

Section 605(a) of the FCA prohibits the unauthorized interception and use of any "radio communication." 47 U.S.C. § 605(a); *J & J Sports Production, Inc.*, 553 F. Supp. 2d at 227.

7

Courts have held that the term "radio communication" includes "satellite transmission." *J & J Sports Productions, Inc. v. RK Soto Enterprises Inc.*, 17 Civ. 2636 (WFK) (VMS), 2020 WL 7684894 at 10 (E.D.N.Y. Feb. 7, 2020); *J & J Sports Prods., Inc. v. Nacipucha*, No. 17 Civ. 1197 (AMD) (SJB), 2018 WL 2709222, at 3 (May 18, 2018), R&R adopted, 2018 WL 2709200 (E.D.N.Y. June 5, 2018). On the other hand, Section 553 prohibits the unauthorized interception of any communications service offered over a "cable system." 47 U.S.C. § 553(a)(1). Liability for a violation of Section 605(a) occurs even if the communication is intercepted without authorization from a cable or other closed circuit transmissions system, as long as the communication had been transmitted by radio at some point prior to its interception from the cable system. *See International Cablevision,* 997 F.2d at 1008-09.

To determine whether Section 605 applies to a given theft, the main question is whether the programming originated as a radio or satellite transmission. *J & J Sports Productions, Inc. v. Muwwakkil*, CV 17-5341 (ADS) (AKT), 2019 WL 2435788 at 5 (E.D.N.Y. Feb. 25, 2019). There are several methods for a plaintiff to demonstrate that a communication originated as a radio or satellite transmission: for example, "[v]iolations of Section 605 have been found where in cases where the complaint referenced the use of decoding equipment, receiving satellite signals from orbiting satellites and that the event was conveyed via satellite transmission." *J & J Sports Prods., Inc. v. Nest Rest. & Bar Inc.*, 17 Civ. 2194 (RJD) (VMS), 2018 WL 4921657 at 5 (E.D.N.Y. July 17, 2018).

Here, Plaintiff's Complaint includes allegations that would permit the court to find that defendants engaged in a satellite violation when they unlawfully displayed the Program at their establishment. *Id*. The Complaint alleges that defendants engaged in 'unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition and that the form of the

8

transmission or the manner in which the defendants allegedly intercepted the communication and that the communication in question originate via radio or satellite transmission. Compl., ¶¶ 24-25. Therefore, Defendant Cancun Cafe is liable under 47 U.SC. § 605.

### D.  Defendant Joseph is not liable under 47 U.S.C. § 605

Plaintiff also seeks to hold Joseph liable under Section 605 in his capacity as the principal of Cancun Cafe. See Compl. ¶¶13-15. If a plaintiff establishes that an entity violated Section 605, individuals connected to the entity may also be liable "under the theories of 'contributory infringement' or 'vicarious liability.'" *J & J Sports Productions, Inc. v. LX Food Grocery Inc.*, 15-CV-6505 (NGG) (PK), 2016 WL 6905946 at 2 (E.D.N.Y Nov. 22, 2016).

A corporate officer is liable under a theory of contributory infringement if that officer authorizes the violations. *J & J Sports Prods. v. Gonzalez*, No. 18-CV-2319 (RRM) (RER), 2019 WL 3716197 at 5-6 (E.D.N.Y. May 9, 2019). Here, Plaintiff simply alleges, upon information and belief, that Defendant Joseph specifically directed the employees of Cancun Cafe to unlawfully intercept, receive and broadcast Plaintiff's Program. Compl. ¶¶ 13-15. Such "formulaic recitation of the elements of a cause of action is insufficient to establish a prima facie case" against Joseph under the contributory infringement theory. See, e.g., *J & J Sports Prods. v. James*, No. 17-CV-5359 (NGG) (ST), 2018 WL 3850731 at 5 (E.D.N.Y. July 25, 2018) (holding that the bare allegation in the complaint asserting that the individual defendant "directed or permitted" the unlawful broadcasting and the fact that the individual is the principal listed on the restaurant's liquor license would be insufficient to establish contributory liability against the individual defendant); *J & J Sports Prods. v. Orellana*, No. 18 CV 2052, 2019 WL 1177719 at 4 (E.D.N.Y. Mar. 13, 2019) (declining to hold individual defendant liable where the plaintiff cited nothing more than defendant's "designation as the owner or principal of [establishment] on its

9

New York State Liquor Authority-issued license"). Thus, this Court cannot conclude that contributory infringement applies to Joseph.

Alternatively, Plaintiff seeks to hold Joseph vicariously liable. Vicarious liability requires that a "corporate officer had (1) a 'right and ability to supervise' the company's activities and (2) 'an obvious and direct financial interest in the exploitation of copyrighted materials' by the corporate entity." *J & J Sports Prods. v. Ahuachapan Corp.*, No. 17-CV-1184 (LDH) (PK), 2019 U.S. Dist. LEXIS 46240 at 6 (E.D.N.Y. Mar. 20, 2019). Relying on Joseph's name being listed on Cancun Cafe's New York State Liquor License (Compl. ¶¶ 10-11), Plaintiff alleges that Joseph had the right and ability to supervise the activities of Cancun Cafe, which included the unlawful interception, receipt and publication of Plaintiff's Program. Compl. ¶ 12. Furthermore, Plaintiff alleges that Joseph "had an obvious and direct financial interest" in the unlawful interception, which resulted in increased profits or financial benefit for Defendants. Compl. ¶¶ 15-16.

The courts within this district have expressed disagreement as to whether a liquor license is enough to establish the first prong of the vicarious liability standard, namely, the "right and ability to supervise the company's activities." *Gonzalez*, 2019 WL 3716197 at 3. However, as Plaintiff's allegations ultimately fail on the second prong for an obvious and direct financial interest, this Court need not make a recommendation on the first prong. *See, e.g., J & J Sports Prods v. Crazy Willy's Bar, Lounge & Rest., Inc*., No. 17-CV-1192 (NGG) (RML), 2018 WL 3629595 at 3-4 (E.D.N.Y. Jul. 30, 2018) (determining that "the court need not decide whether this allegation sufficiently establishes [the first prong] because Plaintiff has failed to satisfy the second prong"). To establish an obvious and direct financial interest, courts look to "whether 'the plaintiff showed direct financial gain, such as a cover charge on the night of the

10

event[,]…[or] strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast.'" *J & J Sports Productions, Inc.*, 2016 WL 6905946 at 3.

Here, Plaintiff's investigator, Steven Aimetti, counted the number of patrons at Cancun Cafe on three separate occasions during the night on which the Program was broadcast, finding twenty, twenty, and twenty patrons respectively, filling twenty percent of Cancun Cafe's capacity of approximately 100 people. Aimetti Aff. at 2, Dkt. No. 15. The Program was broadcast on one television screen. *Id* at 1. Aimetti did not pay a cover charge, *id.*, and Plaintiff does not allege that Defendants imposed a cover charge or a premium surcharge on its goods during the broadcast. *J & J Sports Productions, Inc.*, 2016 WL 6905946 at 3. Moreover, "Plaintiff does not specify whether those patrons made any purchases, how this number compares to the number of patrons at the [establishment] on a typical night, or how many of these patrons were actually watching" the Program. *J & J Sports Prods., Inc.*, 2018 WL 4921657 at 3 (rejecting claim of indirect financial gain where Plaintiff only alleged 35 patrons present at the establishment).

Based on the foregoing evidence, this Court determines that Joseph had no obvious and direct financial interest in the alleged infringement. Compare *J & J Sports Prods. v. McAdam*, No. 14-CV-5461 (PKC) (CLP), 2015 WL 8483362 (E.D.N.Y. Dec. 9, 2015) (financial interest found where establishment was at or over capacity with approximately 100 patrons and charged $20.00 cover), with *J & J Sports Prods. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 18-CV-2622 (NGG) (RML), 2018 WL 6985009 (E.D.N.Y. Nov. 29, 2018) (finding no financial interest where establishment had maximum capacity of 75 but only 26 patrons in attendance and investigator reported no cover charge), adopted by, 2018 WL 6716095 (E.D.N.Y. Dec. 21,

11

2018). Accordingly, vicarious liability cannot be established, and this Court respectfully recommends that Plaintiff's motion for default judgment be denied as to Defendant Joseph.

Therefore, since Plaintiff has not shown that Joseph was contributorily or vicariously liable for the acts of Cancun Cafe, this Court respectfully recommends that Plaintiff's Motion for Default Judgment be denied as to Defendant Joseph.

### E. Damages

Plaintiff requests damages only under Section 605 of the FCA in its Motion for Default Judgment. Mot. Default J., Mem. of Law at 5-6, Dkt. No. 15, Attach. No. 2. Also, while in the initial complaint, Plaintiff sought $110,000.00 in damages for the Section 605 claim and $60,000.00 in damages for the Section 553 claim (*see* Compl. at 10), in this motion, Plaintiff has revised its request and seeks $4,200.00 for statutory damages and $12,600.00 for enhanced damages, along with pre- and post-judgment interest. Mot. Default J., Mem. of Law at 5-6, Dkt. No. 15, Attach. No. 2. Plaintiff also requests that the Court grant thirty (30) days from the date judgment is entered to submit a motion for costs and attorneys' fees. *Id* at 11-12.

#### 1. Statutory Damages

To establish damages upon a default, the movant needs to prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *See Greyhound Exhibitgroup, Inc*. v. E.L.U.L Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992). The Court may award damages without an evidentiary hearing as long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted).

To support Plaintiff's damages request, Plaintiff submits: (i) the affidavit of Joseph Gagliardi, Plaintiff's President; (ii) the License Agreement granting Plaintiff exclusive

nationwide closed-circuit rights to the Program; (iii) the rate schedule for businesses of various sizes to obtain a license to broadcast the Program; and (iv) the affidavit of investigator Aimetti who observed the unlicensed broadcast of the Program at Cancun Cafe. This documentary evidence is sufficient for this Court to calculate damages without conducting a hearing. *See, e.g., J & J Sports Productions, Inc. v. Emily Bar Restaurant Inc.*, 15-CV-6499 (RJD), 2016 WL 6495366 at 2 (E.D.N.Y. Sept. 27, 2016).

If a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages. *See* 47 U.S.C. § 10 605(e)(3)(C)(i). *J & J Sports Prods., Inc. v. Dzako & Sons Corp.*, No. 13-CV-2739 (ARR) (CLP), 2014 WL 1871917 at 5 (E.D.N.Y. May 8, 2014). A plaintiff who elects statutory damages may recover a per-violation award "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

Section 605 statutory damages are generally determined based on the greater of two calculations: either the flat fee or per-person method. *J & J Sports Productions, Inc.*, 2016 WL 6905946 at 2-3 (citation omitted). Under the "flat fee" method, the court calculates the amount that defendants would have paid in exchange for the right to show the Event legally—in this case, Plaintiff's licensing fee. *Id*. Under the "per-person" method, damages are equal to the amount an individual consumer would have paid to view the Event pay-per view, multiplied by the number of consumers who watched the illegally transmitted Event. *Id*.

Here, this Court will apply the flat fee method because Plaintiff does not offer any evidence of a per-person licensing fee. In the Complaint, Plaintiff alleges that, under the flat fee method, Cancun Cafe would have paid $2,000.00 for Plaintiff's commercial license to broadcast the Program. Compl. ¶ 28. However, Plaintiff's Rate Card for broadcasting the Program, Gagliardi's Affidavit, and Plaintiff's Memorandum in Support of Default state that Cancun

13

Cafe's commercial license fee was $1,400.00.  Gagliardi Aff., Ex. 2., Dkt. No. 15, Attach. No. 2; Mot. Default J., Mem. of Law at 8, Dkt. No. 15, Attach. No. 2; Gagliardi Aff. at 3, Dkt. No. 15, Attach. No. 1.  Therefore, this Court respectfully recommends that Plaintiff be awarded $1,400 in statutory damages.

### 2. Enhanced Statutory Damages

Plaintiff also requests an award of enhanced statutory damages.  Mot. Default J. at 2-3, Dkt. No. 15.  The FCA provides that if any violation of Section 605(a) "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference for its requirements.'" *J & J Sports Production, Inc. v. El Ojo Aqua Corp.*, No. 13–CV–6173 (ENV) (JO), 2014 WL 4700014 at 6 (E.D.N.Y Aug. 29, 2014) quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126–27, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

Many courts in this Circuit have concluded that intercepting and broadcasting a televised event without permission constitutes willful conduct for purposes of commercial advantage.  *See J & J Sports Prods.*, 2018 WL 3850731 at 7-8; see also *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").  Noting the weight of authority in this Circuit and Plaintiff's assertion that its Program cannot be mistakenly, innocently or accidentally intercepted, the Court recommends finding that Cancun Cafe's broadcast of the Program without a license is sufficient to establish that its breach was willful and undertaken for the purposes of commercial advantage.

Having established Cancun Cafe's willfulness, the Court must weigh various factors to determine the amount to award enhanced damages, including "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *J & J Sports Prods.*, 2018 WL 3850731 at 8-9.  In determining the amount of enhanced damages, Courts in this District have taken varying approaches, ranging from applying a multiple of two or three times the amount of statutory damages, to applying an equal amount to statutory damages, or denying enhanced damages entirely. *J & J Sports Prods. v. Morocho*, No. 18-CV-2302 (AMD) (RML), 2019 WL 1339198 at 6 (E.D.N.Y. Feb. 27, 2019) (citing *J & J Sports Prods. v. Afrikan Poetry Theatre, Inc.*, No. 17-CV-2196, 2018 WL 2078482, at 6 (E.D.N.Y. Feb. 27, 2018) (collecting cases), adopted by, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018)).

Here, none of the aggravating circumstances in the aforementioned five-factor test apply. Plaintiff complains only of one violation by Cancun Cafe and has submitted no evidence as to the amount of Cancun Cafe's monetary gains, Cancun Cafe's advertisement of the Program, a cover charge, or a premium placed on food or drinks.  The only actual damages suffered by Plaintiff— namely, Defendants' failure to pay the $1,400.00 licensing fee—has already been accounted for in the Court's recommended statutory damages award.  Nevertheless, even in cases where none of the five factors militate in favor of awarding enhanced damages, courts in this Circuit have awarded "enhanced damages as a deterrent to the problem of persistent signal piracy and to compensate Plaintiff for intangible losses such as business investment, business opportunities, reputation, and goodwill." See *J & J Sports Prods. v. GPN Bar Inc.*, No. 15-CV-6504 (FB) (ST), 2016 WL 8139019 at 6 (E.D.N.Y. Dec 15, 2016) (awarding enhanced damages

equal to statutory damages to deter future violations) (citation and internal quotation marks omitted); *J & J Sports Prods. v. LDF Williams*, LLC, No. 11–CV–2145 (KAM), 2011 WL 5402031 at 4-5 (E.D.N.Y. Nov. 7, 2011) (same).

The Court finds that merely awarding Plaintiff the cost of the fee to broadcast the Program as statutory damages would insufficiently deter future signal piracy and insufficiently compensate Plaintiff for these intangible losses. This Court, therefore, recommends an award of enhanced damages of $1,400.00, which is equal to the award of statutory damages recommended by the Court, for a total award of $2,800.00.

### 3. Pre-judgment and post-judgment interest

Plaintiff also seeks recovery of pre-judgment and post-judgment interest at the federal statutory rate, requesting permission to move for the specific amount of such interest within thirty days of entry of the judgment. Pl.'s Mot., Mem. of Law at 5, Dkt. No. 15, Attach. No. 2. The FCA does not provide for awards of pre- or post- judgment interest but it is within the discretion of courts to award pre-judgment interest when "the awards were fair, equitable, and necessary to compensate the wronged party fully." *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 835 (2d Cir. 1992)). However, courts "should not award prejudgment interest where 'the statutory obligation on which interest is sought is punitive in nature.'" *Id* at 834. Because statutory damages under the FCA are often construed as being "analogous to punitive damages," courts typically decline to award pre-judgment interest pursuant to these violations. *J & J Sports Productions, Inc*., 2016 WL 6905946 at 5.

However, no such legal barrier to awarding post-judgment interest exists. *See, e.g., J & J Sports Prods*, 2019 WL 1339198 at 7 (awarding post-judgment interest at the federal

statutory rate); *J & J Sports Prod. v. Leon*, 18--CV--2103 (PKC) (RML), 2019 WL 1320277 at 7-8 (E.D.N.Y. Mar. 22, 2019). Therefore, this Court respectfully recommends denying Plaintiff's request for pre-judgment interest but granting its request for post-judgment interest.

### 4. Attorneys' fees and Costs

Plaintiff requests thirty (30) days from the date judgment is entered to submit a request for attorneys' fees and costs. Pl.'s Mot., Mem. of Law at 10-11, Dkt. No. 15, Attach. No. 2. The FCA provides that courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Since a prevailing party is statutorily entitled to recover these damages, this Court respectfully recommends that Plaintiff's application to submit a request for attorneys' fees and costs 30 days from the entry of judgment be granted. See, e.g., *J & J Sports Prods. v. Inga*, No. 18-CV-2542 (PKC) (RLM), 2019 WL 1320278 at 6 (E.D.N.Y. Mar. 22, 2019) (granting plaintiff 30 days to submit separate motion with supporting documentation for costs and attorneys' fees); *J & J Sports Prods* 2019 WL 1339198 at 7 (E.D.N.Y. Feb. 27, 2019) (same).

### IV. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that:

(a) Plaintiff's motion for default judgment against Cancun Cafe be granted;

(b) Plaintiff's motion for default judgment against Jean Joseph be denied and the claims against him be dismissed;

(c) Plaintiff be awarded $2,800.00, consisting of $1,400.00 in statutory damages and $1,400.00 in enhanced damages;

(d) Plaintiff be awarded post-judgment interest but denied pre-judgment interest; and

(e) Plaintiff be permitted to file a motion for costs and attorney's fees no more than thirty (30)

days after the entry of judgment.

### V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
January 20, 2022